# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:25-cv-00440-WO-JLW

CAPE FEAR RIVER WATCH and )
HAW RIVER ASSEMBLY, )
                           )
        Plaintiffs, )
                           )   **DEFENDANTS' JOINDER TO CITY OF**
     v.                )   **ASHEBORO'S MOTION TO DISMISS**
                           )
THE CITY OF ASHEBORO; )
INDORAMA VENTURES USA, LLC, )
and STARPET INC., )
                           )
        Defendants. )
                           )

       COMES NOW, Defendants Indorama Ventures USA LLC and StarPet Inc. (collectively, "StarPet"), by and through the undersigned counsel, and respectfully submit this Joinder to Defendant City of Asheboro's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons set forth herein, Plaintiffs failed to state a claim against StarPet, and StarPet respectfully requests that this Joinder to the Motion to Dismiss be GRANTED and that Plaintiffs' claims be DISMISSED with prejudice.

       Alternatively, StarPet joins in Asheboro's request to stay this matter pending resolution of ongoing state and federal litigation.

<u>**MEMORANDUM IN SUPPORT OF JOINDER**</u>

Plaintiffs' complaint, spanning over 250 paragraphs, is long on allegations but short on legally viable claims. The City of Asheboro's Motion to Dismiss correctly identifies several fatal defects in the complaint, and although the StarPet Defendants are private entities, they are in materially the same position as Asheboro. Plaintiffs have failed to allege any facts that support a plausible inference that either Indorama Ventures USA LLC or StarPet Inc. violated the Clean Water Act ("CWA"), much less that any such violation proximately caused harm to the Cape Fear watershed, as alleged specifically against StarPet in Counts II and V.

StarPet, Inc. is a North Carolina-based manufacturer of polyethylene terephthalate (PET) resin and a wholly owned subsidiary of Indorama Ventures. See ECF No. 1, Plaintiffs' Complaint, ¶¶ 53-54. StarPet operates a facility in Asheboro, North Carolina, that produces PET for a range of consumer and industrial applications. *Id*. In this litigation, Plaintiffs allege that discharges from the Asheboro wastewater treatment system have contributed to the presence of 1,4-dioxane in downstream waters. See, *e.g.*, *Id*. at ¶ 7. Although StarPet is not a permittee under the Clean Water Act, Plaintiffs have named the company as a defendant based on alleged indirect contributions to those

2

discharges. StarPet maintains that it has operated in compliance with all applicable local, state, and federal requirements and that Plaintiffs' claims are legally and factually deficient.

In addition to joining Asheboro's Statement of the Case, Statement of Facts and Standard of Review, and any further submissions filed by Asheboro in support of their Motion, StarPet hereby joins in and augments the four major arguments raised by Asheboro.

## A. Lack of Jurisdiction Due to Diligent Prosecution

As discussed in Section A of Asheboro's Motion, the Clean Water Act bars citizen suits where a state or federal agency is already diligently prosecuting the same violations. Here, both the North Carolina Department of Environmental Quality (DEQ) and the U.S. Environmental Protection Agency (EPA) are actively engaged in enforcement and regulatory proceedings related to 1,4-dioxane. DEQ is presently litigating the validity of 1,4-dioxane permit limits in state court, and the EPA is reevaluating its risk assessments for 1,4-dioxane. Motion to Dismiss, pp. 5-6. Just as with Asheboro, these proceedings reflect ongoing governmental enforcement that precludes parallel citizen suit claims against StarPet.

## B. StarPet's Industrial User Permit Bars the Claims

In addition to the permit shield arguments raised by Asheboro, it is important to note that StarPet holds a permit from the City

3

of Asheboro that does not include effluent limitations for 1,4-dioxane. *See* ECF No. 1, ¶ 139, Attachment 18 – Industrial User Permit issued July 30, 2022 and expiring on July 29, 2027. Even though StarPet is an industrial user that discharges to the City of Asheboro's publicly owned treatment works, it is still entitled to protection under the Clean Water Act's permit shield doctrine, 33 U.S.C. § 1342(k). That provision bars liability for discharges made in compliance with the terms of an NPDES permit and applicable regulations. As the Fourth Circuit has recognized, a discharger is protected from liability under the Clean Water Act when it complies with the express terms of its permit and discloses all relevant information to the permitting authority. *Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty.*, 268 F.3d 255, 268 (4th Cir. 2001).

Here, StarPet operates under a permit issued by the City of Asheboro (*see* ECF No. 1, ¶ 139, Attachment 18), which itself holds an NPDES permit issued by the North Carolina DEQ. As required under federal and state law, and as discussed in its Motion to Dismiss, Asheboro maintains an EPA-approved pretreatment program under which it regulates the discharges of its industrial users, including StarPet. The Complaint contains no allegations showing lack of compliance with the requirements imposed by Asheboro under the program. It cannot be disputed that both Asheboro and DEQ have

4

been aware of StarPet's activities and its discharges, including the presence or potential for 1,4-dioxane.

Courts have acknowledged that when an industrial user complies with a validly delegated and state-supervised pretreatment program, and the pollutants at issue are either expressly permitted or deliberately unregulated in the NPDES permit framework, it may be inappropriate to impose liability outside that scheme. See *Nat. Res. Def. Council, Inc. v. Cnty. of Los Angeles*, 725 F.3d 1194, 1206-07 (9th Cir. 2013) [discussing limitations of permit shield but recognizing its application where discharges are disclosed and permitted].

The City of Asheboro's Reinstated NPDES permit - like StarPet's industrial user permit - does not contain an effluent limitation for 1,4-dioxane (as discussed in Asheboro's Motion to Dismiss, Statement of the Case, pp. 9-11), and DEQ has affirmatively decided not to enforce such limitations while the regulatory and rulemaking processes are ongoing. Plaintiffs' attempt to bypass this regulatory framework by imposing direct liability on StarPet disregards the structured oversight of DEQ and the purpose of the permit shield doctrine. As long as StarPet remains in compliance with the requirements imposed by Asheboro pursuant to its approved pretreatment program, any alleged discharges fall squarely within the scope of the permit shield.

5

### C. No Ongoing Violations Alleged.

StarPet joins in and adopts all arguments in Asheboro's Motion regarding the Plaintiffs' claims of ongoing violations. These claims rely on alleged discharges of 1,4-dioxane that predate the current permits. The Clean Water Act authorizes citizen suits only for ongoing violations. Because the Complaint contains no plausible allegations of continuing violations under the currently operative permits, it fails to state a claim against StarPet.

### D. No Valid Effluent Limitation Exists

StarPet joins in Asheboro's Motion to Dismiss, Section D, regarding the derived numeric standards. The numeric 1,4-dioxane standard cited by Plaintiffs has not been lawfully adopted under North Carolina rulemaking procedures. As the Office of Administrative Hearings recently confirmed, DEQ's efforts to impose 1,4-dioxane limits without proper rulemaking are void. Without a valid standard, Plaintiffs cannot establish that any defendant has violated the Clean Water Act, and thus StarPet joins in and adopts all such arguments in Asheboro's Motion.

### E. Motion to Stay Proceedings

Finally, StarPet joins Asheboro's Motion to Stay to avoid unnecessary expense and duplicative litigation while the Court resolves threshold jurisdictional and preclusion issues that could significantly narrow or eliminate this case.

6

## CONCLUSION

For the foregoing reasons, defendants Indorama Ventures USA LLC and StarPet Inc. respectfully join the City of Asheboro's Motion to Dismiss and Motion to Stay, and request that the Complaint be dismissed or stayed in its entirety as to all defendants, including Joining Defendants. Dismissal will conserve judicial resources and appropriately defer to the ongoing state and federal proceedings already addressing the very issues Plaintiffs seek to litigate prematurely in this forum.

This the 28th day of July, 2025.

**GORDON REES SCULLY MANSUKHANI LLP**

BY: /s/ Megan E. Gruber

MEGAN E. GRUBER
California Bar No. 246122 (*by special appearance*)
BRIAN M. LEDGER
California Bar No. 156942 (*by special appearance*)
ALLISON J. BECKER
NC Bar No. 41993
150 Fayetteville St. #1120
Raleigh, NC 27601
Telephone: 919-787-4555
E-mail: megruber@grsm.com
    bledger@grsm.com
*Attorneys for Defendants, Indorama Ventures LLC and StarPet Inc.*

7

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this Brief complies with Local Rule 7.3(d)(1). The number of words in this Brief, exclusive of the caption, signature lines, certificate of service, certificate of word count, and any cover page or index, does not exceed 6,250 according to the word count function of the word processing software used to prepare the Brief.

By: /s/ Megan E. Gruber
MEGAN E. GRUBER

## STATEMENT OF COMPLIANCE

The undersigned declares that, pursuant to this Court's June 27, 2025, Order, counsel for Indorama Ventures USA LLC, and StarPet Inc. (collectively, "StarPet") did meet and confer with counsel for plaintiff on July 25, 2025, regarding StarPet's intention to file a joinder to City of Asheboro's Motion to Dismiss.

By: /s/ Megan E. Gruber
    MEGAN E. GRUBER

9

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 28, 2025, the foregoing ***Defendants' Joinder to City of Asheboro's Motion to Dismiss*** was filed electronically with the Clerk of the United States District Court for the Middle District of North Carolina using the CM/ECF system which will send notification of this filing and an electronic copy of the same to all counsel of record registered with the CM/ECF system.

Hannah M. Nelson
Jean Zhuang
Zoe Mehta
Kasey Moraveck
136 East Rosemary Street, Suite 500
Chapel Hill, North Carolina 27514
Telephone: (919) 967-1450
Facsimile: (919) 929-9421
E-mail: hnelson@selc.org
E-mail: jzhuang@selc.org
E-mail: zmehta@selc.org
E-mail: kmoraveck@selc.org
*Attorneys for Plaintiffs*

Stephen Jenkins Bell
Chad Rhoades
Cranfill Sumner LLP
5535 Currituck Drive, Ste. 210
Wilmington, NC 28403
Telephone: (910) 777-6056
sbell@cshlaw.com

Chad Rhoades
Cranfill Sumner LLP
crhoades@cshlaw.com
(919) 828-5100
5440 Wade Park Boulevard, #300
Raleigh, NC 27607

*Attorneys for City of Asheboro*

10

**GORDON REES SCULLY MANSUKHANI LLP**

BY: /s/ Megan E. Gruber
MEGAN E. GRUBER
California Bar No. 246122 (*by special appearance*)
BRIAN M. LEDGER
California Bar No. 156942 (*by special appearance*)
ALLISON J. BECKER
NC Bar No. 41993
150 Fayetteville St. #1120
Raleigh, NC 27601
Telephone: 919-787-4555
E-mail: megruber@grsm.com
        bledger@grsm.com
*Attorneys for Defendants, Indorama Ventures LLC and StarPet Inc.*

11